UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>  Plaintiff,<br><br>  v.<br><br>JESUS GARIBAY,<br><br>  Defendant. | Case No. 1:19-cr-00093-DCN<br><br>**MEMORANDUM DECISION AND ORDER** |

## I. INTRODUCTION

Pending before the Court are numerous motions filed by the parties in preparation for trial. The Government's Motion in Limine to exclude any evidence that Defendant, Jesus Garibay, was the victim of a drive-by shooting in 2016 and a battery in April of 2018. Dkt. 29. Garibay has also filed a Notice of Public Authority/Entrapment by Estoppel Defense and an Offer in Support of a Justification Defense. Dkts. 38, 39, 56.

The Court held oral argument on October 2, 2020 and took the motions under advisement. For the reasons set forth below, the Court GRANTS the Defendant's request to present a justification defense, DENIES the Defendant's request to present an entrapment by estoppel defense, and DENIES the Government's Motion in Limine to exclude evidence.

## II. BACKGROUND

Jesus Garibay was indicted in federal court on March 12, 2019 on one count of unlawful possession of a firearm under 18 U.S.C. 922(g)(9). Dkt. 1. Under this provision,

MEMORANDUM DECISION AND ORDER - 1

individuals with prior misdemeanor convictions for domestic violence in any court are prohibited from possessing a firearm. This indictment arises from conduct which occurred in December of 2018.

Jesus Garibay was convicted of misdemeanor domestic battery in May of 2016 in the Third District Court of Idaho, thus prohibiting him from possessing a firearm. In November 2016, Garibay was dating Emily Contreras—the victim of the prior domestic battery conviction with whom he resided. That month, Garibay was the victim of a drive-by-shooting allegedly committed by Contreras's brother and a cohort. During the investigation of this crime, Detective Joseph Cardwell, from the Treasure Valley Metro Violent Crimes Task Force, approached Garibay with an offer to become an informant. Cardwell was attempting to capitalize on Garibay's past association with the North-side gang. After meeting with Cardwell a handful of times, rumors spread in the community that Garibay was a "snitch." Additionally, Fernando Hernandez, one of the purported perpetrators of the November 2016 drive-by shooting, discovered that Garibay had cooperated with law enforcement in their investigations of the event. Hernandez then supposedly put a gang-ordered hit, or "light", on Garibay, leading to an attack on Garibay by two assailants in April of 2018.

Less than a month later, Contreras purchased a firearm from a pawn shop, and kept it in her home which she shared with Garibay and their six-month old child. Contreras claims that this was solely her firearm, and that it was locked in a safe which Garibay could not access.

As of December 2, 2018, Garibay and Contreras had separated and Garibay had

MEMORANDUM DECISION AND ORDER - 2

moved into his mother's house. On December 2, Garibay returned to the residence he shared with Contreras to retrieve personal belongings. Contreras became volatile and later admitted to police to "flipping out." Dkt. 56, Exhibit M at 4:28-4:35. Whilst collecting his things, Garibay saw the firearm Contreras purchased in May of 2018 out in plain view—not locked in the safe. Fearing the situation may escalate, Garibay took possession of the firearm, and locked it in his brother's vehicle. Garibay then called Boise Police to ask for assistance in retrieving his things. When Officer Ian Seavey arrived on scene, Garibay informed him that he was ending his relationship with Contreras and needed to collect his belongings from the residence. Dkt. 56, Exhibit M at 1:55-2:03.  Garibay also mentioned that he had recently gotten off probation. *Id.* When asked if there were any firearms, Garibay told Officer Seavey that he had taken Contreras' gun and locked it in his brother's vehicle. *Id.* at 2:15-2:50. At that point, Officer Seavey instructed Garibay to take his hands out of his pockets, and to leave the firearm locked in the vehicle. *Id.*

After Garibay left the residence, Contreras called Boise Police to report that Garibay had stolen her firearm. Officer Seavey then contacted Garibay via text and directed him to turn the firearm over to the Caldwell Police, which Garibay did. Garibay was subsequently arrested in February 2019 for the unlawful possession of a firearm relating to his conduct on December 2, 2018.

The Government seeks to exclude evidence related to these preceding threats—specifically, the 2016 drive-by shooting and the 2018 battery. Dkt. 29. Garibay endeavors to assert two defenses at trial: (1) a public authority/entrapment by estoppel defense; and (2) a justification defense. Dkt. 38, 39, 56. Garibay's first defense relates to the

MEMORANDUM DECISION AND ORDER - 3

circumstances leading up to, and including, his arrest. Garibay's second defense—justification—is closely related to the series of threats and assaults leading up to Garibay's conduct in December of 2018.

## III. LEGAL STANDARD

Garibay seeks jury instructions for two separate defenses: justification and entrapment by estoppel/public authority. A defendant is entitled to a jury instruction relating to a defense if there is "any foundation in the evidence." *United States v. Morton*, 999 F.2d 435, 437 (9th Cir. 1993). To satisfy this requirement, a defendant need only provide evidence upon which a rational jury could find in the defendant's favor. *Id.* While this is a rather low burden, the defendant must show something more than a mere "scintilla" of evidence. *U.S. v. Johnson,* 459 F.3d 990, 993 (9th Cir. 2006). However, a defendant is entitled to the instruction even if the evidence is "weak, insufficient, inconsistent, or of doubtful credibility." *United States v. Sotelo-Murillo*, 887 F.2d 176, 178 (9th Cir.1989).

## IV.  ANALYSIS

### A.  Justification Defense

#### 1.  Legal Standard

To be entitled to a justification defense, a defendant must establish four elements. *United States v. Gomez*, 92 F.3d 770, 775 (9th Cir. 1996). First, the defendant was under an unlawful and present threat of harm. *Id.* This element requires that the present threat of harm immediately precede the criminal conduct. *Id.* Second, that the defendant did not recklessly place himself in a situation where he would be forced to engage in the criminal conduct. *Id.* Third, the defendant must show he had no reasonable legal alternative to the

criminal conduct. *Id.* And finally, there must be a direct causal relationship between the criminal action and the avoidance of the threatened harm. *Id.*

   2. *Analysis*

Garibay is entitled to a jury instruction on a justification defense because he has provided sufficient evidence to establish all four elements of the affirmative defense. At this stage, the Court must review the facts as presented by Garibay. *See U.S. v. Lemon*, 824 F.2d 763. 765 (9th Cir. 1987). Garibay need not provide strong evidence to support each element—rather, Garibay only must provide sufficient evidence upon which a rational jury could find that he was justified in possessing the firearm. *See Morton,* 999 F.2d at 437. The Court finds that Garibay has carried that burden.

   First, Garibay has established sufficient evidence that he was under a present threat of danger. When considering the evidence, Garibay only needs to "present[] a plausible case that he thought himself in danger." *Gomez,* 92 F.3d at 776. The mere assertion that the defendant has been threatened is not sufficient to support a justification defense. *U.S. V. Wofford,* 122 F.3d 787, 790 (9th Cir. 1997). In *Wofford*, the defendant claimed that he had received numerous threats and had been assaulted several times over a period of six years. *Id.* However, the defendant could not point to any specific incidents in the five months leading up to charged conduct. *Id.* The Ninth Circuit concluded that "unless a defendant presents evidence of a specific threat or a specific instance when he was threatened, it is impossible for the court to determine whether the four elements to the justification defense have been met. In such circumstances, the justification defense is unavailable as a matter of law." *Id.*

MEMORANDUM DECISION AND ORDER - 5

Courts have noted that a threat does not need to be so immediate as to require a showing that the defendant had a gun to their head. *Gomez*, 92 F.3d at 775-77.  The Ninth Circuit has allowed a justification defense where the defendant had not received a threat in the day prior to the defendant purchasing a firearm, but where the defendant had reason to believe that the threats would be carried out. *Id.* In *Gomez,* the alleged attacker had personal knowledge of Gomez, his family, and demonstrated an ability to carry out those threats. *Id.* at 776. Though Gomez had not received any threats immediately preceding his purchase of a firearm, the court found that Gomez was under a present and continuing threat of harm. *Id.*  That said, courts have declined to present a justification defense where the immediate threat has vacated, and there appears to little risk that the threat will continue. *United States v. Nolan*, 700 F.2d 479, 485 (9th Cir. 1983), (denying justification defense in a bar brawl where the other party left).

In this case, Garibay is able to point to a specific instance—December 2, 2018—in which he was threatened. Garibay and Contreras had a volatile history, including implications that Contreras has solicited her brother's help in the past to attack Garibay. Sometime on or before December 2, 2018, Contreras and Garibay separated**.** When Garibay returned to the residence he had shared with Contreras and their child to retrieve personal belongings, Contreras "flipped out." Dkt. 56, Exhibit M at 4:28-4:35. During the encounter, Contreras told Garibay, "Let's see how far you get, Jesus.  Let's see how far you get." Dkt. 56, Exhibit. M at 13:40-13:49. Garibay responded by referencing the two prior acts of violence against him, including the drive by shooting in 2016 perpetrated by Contreras' brother: "Just don't try to send someone to shoot me or stab me okay?" *Id.* Like in *Gomez*,

Garibay reasonably believed that Contreras had the motivations and ability to carry out a threat.  These statements, in conjunction with their volatile past and Contreras' behavior on December 2, 2018, demonstrate that Garibay plausibly believed himself to be under a present threat of harm.

Next, Garibay can establish that he did not recklessly place himself in a situation where he would be endangered. On December 2, 2018, Garibay did not step into an inherently violent environment. Rather, Garibay returned to the home he had shared with Contreras and their child to retrieve personal belongings. There is no evidence to suggest that Garibay entered the house to instigate a fight, escalate the situation, or anything other than retrieve his belongings. As such, this does not rise to a level of reckless endangerment.

The third element in a justification defense is the defendant had no reasonable legal alternative. Under this element, a defendant must generally show that they sought "aid from law enforcement before taking matters into his own hands." *Wofford*, 122 F.3d at 791. However, a defendant may also show that he "had no time to try it, or that a history of futile attempts revealed the illusionary benefits of the alternatives." *Id.*

Here, under the facts presented, Garibay was concerned in that moment that Contreras would become violent, and use the firearm, which was laying out in open view. Because Contreras could have become violent at any point, Garibay had to act quickly by removing the gun from Contreras' access and locking it in his brother's car. Given this timeframe, Garibay likely did not have time to wait and try a legal alternative.

Additionally, during the December 2, 2018 incident, after Contreras became volatile, Garibay called police to act as a civil standby while he retrieved his things. In his

MEMORANDUM DECISION AND ORDER - 7

conversation with police, Garibay told the officer that he was concerned for his safety and had locked Contreras' gun in his brother's car. The officer then instructed Garibay to leave the firearm in the vehicle. Thus, even after Garibay had removed the firearm from the situation, he sought a reasonable legal alternative by contacting the police and was not told to turn over the firearm to police at that time. As such, Garibay has provided sufficient evidence of the third element of a justification defense.

Finally, Garibay must establish that there was a direct causal link between the threatened harm and the criminal conduct. *See Gomez,* 92 F.3d at 775. In *Wofford*, the defendant claimed to have unlawfully possessed a firearm to protect himself and his family from threats of violence made by his former gang. *Wofford,* 122 F.3d at 792. However, the Ninth Circuit found that where the Defendant kept the gun—at a neighbor's house, in his mother's attic, and under his mattress—was not easily accessible, and thus the defendant would not be able to use the firearm if his life was under immediate threat. *Id.*

Here, Garibay did not take possession of the firearm in order to use if for protection like in *Wofford.* Rather, Garibay took possession of a firearm so that someone else would not be able to use it against him. Contreras was volatile, had a history of violence towards Garibay, and had easy access to a firearm. Fearing Contreras would become violent and use the gun against him, Garibay took possession of the firearm and locked it in his brother's vehicle. Garibay's criminal conduct—the unlawful possession of a firearm for less than 24 hours—is directly related to the threatened harm in this case. Unlike in *Wofford*, where the defendant's possession of a firearm provided him no protection, Garibay, by taking possession of the firearm, was able to directly prevent the threatened

harm. Thus, the fourth element of the justification defense is met.

The burden of proof for a jury instruction is rather low—Garibay only needs to show some foundation in the evidence for each element of a justification defense. Here, Garibay meets that burden and is, therefore, entitled to a jury instruction on the justification defense.

## B.  Entrapment by Estoppel/Public Authority Defense

### 1.  Legal Standard

For an entrapment by estoppel defense, a defendant must show that an authorized government official, empowered to render claimed erroneous advice, who has been made aware of all relevant historical facts, affirmatively told him that the proscribed conduct was permissible. *U.S. v. Batterjee*, 361 F.3d, 1210, 1216 (9th Cir. 2004). The defendant must then rely on that false information, and that reliance must be reasonable. *U.S. v. Brebner*, 951 F.2d 1017, 1024 (9th Cir. 1991). To determine if that reliance was reasonable, courts implement an objective test. *Id.* Entrapment by estoppel is a defense derived from the Due Process Clause, which prohibits convictions based on misleading government action. *Batterjee*, 361 F.3d at 1216. Unlike the entrapment defense—which focuses on the defendant's subjective state of mind—entrapment by estoppel is more concerned with the government's conduct. *Id.*

A public authority defense is closely related to entrapment by estoppel. Under this affirmative defense, a defendant must show he reasonably relied on the authority of a government official who engaged his participation in a criminal activity. *U.S. v. Burrows*, 36 F.3d 875, 881 (9th Cir. 1994).  This defense requires that the government agent "had the authority to empower the defendant to perform the acts in question." *Id.* However,

unlike entrapment by estoppel, the defendant need not show that the government agent affirmatively misled the defendant—rather, the defendant may have mistakenly relied on a non-erroneous government statement or action, so long as that reliance was reasonable. *Id.* at 882.

   *2. Analysis*

   Garibay also attempts to raise a public authority and entrapment by estoppel defense. Dkt. 38. These two defenses are closely related, and in the present case, Garibay cannot satisfy the elements of either.

   First, Garibay cannot establish sufficient evidence that Officer Seavey was an authorized law enforcement officer empowered to give the erroneous advice. The Ninth Circuit has held that "in asserting an entrapment by estoppel defense to charges of violating federal law, a defendant is required to show reliance either on a federal government official empowered to render the claimed erroneous advice, or on an authorized agent of the federal government [. . .]." *Brebner,* 951 F.2d 1017 (9th Cir. 1991). In *Brebner*, the defendant was not entitled to rely on statements made by state and local law enforcement officers because they did not have the authority to bind the federal government with their erroneous statements. *Id.* at 1026; s*ee also United States v. Obendorf*, 2016 WL 2354224 (D. Idaho 2016) (finding that defendant could not rely on statements made by state fish and game officials as part of entrapment by estoppel defense).

   In the present case, Garibay relied on statements made by Officer Seavey from the Boise Police Department. Because Officer Seavey works for a city police agency, he did not have the authority to bind the federal government by any erroneous advice concerning

MEMORANDUM DECISION AND ORDER - 10

federal law. Garibay argues that he reasonably believed that Officer Seavey had authorization from the federal government, because Garibay had previously interacted with Caldwell police officers who worked closely with a joint state-federal task force. Dkt. 38. However, the defense of entrapment by estoppel is not concerned with Garibay's beliefs—it is concerned with the nature of the government conduct. Here, Officer Seavey was working for the Boise Police Department and identified himself as such—he had no actual authority to bind the federal government by any misleading or erroneous advice. As such, Garibay cannot establish either a public authority or entrapment by estoppel defense.

Additionally, Officer Seavey did not affirmatively empower Garibay to engage in the prohibited conduct. To bring a defense of entrapment by estoppel, a defendant must show "some kind of 'affirmative misleading' by government officials in order to satisfy the elements of this defense." *Brebner*, 951 F.2d at 1024-26; *see also United States v. Ramirez-Valencia,* 202 F.3d 1106, 1109 (9th Cir. 2000) (holding that the defendant "must show that the government affirmatively told him the proscribed conduct was permissible").

Here, Garibay was already in possession of the gun before he was in contact with Officer Seavey. Additionally, the text messages between Garibay and Officer Seavey do not indicate that Officer Seavey affirmatively told Garibay that the conduct was permissible. *See* Dkt. 44-1. Instead, Officer Seavey instructed Garibay to return the gun. Additionally, the text messages show that Garibay was already in transit to the Caldwell Police Department and in possession of the firearm when Officer Seavey told him to return the firearm. Dkt. 44-1. It cannot be said that Officer Seavey's statements led Garibay to violate federal law where Garibay was already in possession of the prohibited firearm.

MEMORANDUM DECISION AND ORDER - 11

Even if Officer Seavey made an affirmative statement to Garibay, Garibay's reliance upon that statement was not reasonable. The reasonableness of reliance on misleading statements is judged based on an objective standard. *Brebner,* 951 F.2d at 1024. To be reasonable, a defendant must show that "'a person sincerely desirous of obeying the law would have accepted the information as true and would not have been put on notice to make further inquiries.'" *United States v. Tallmadge*, 829 F.2d 767, 775 (9th Cir. 1987) (quoting *United States v. Lansing*, 424 F.2d 225, 227 (9th Cir. 1970)). In the present case, Officer Seavey works for Boise Police Department, not the Caldwell Police Department, where Garibay turned over the gun. It is not reasonable that Garibay would rely upon Officer Seavey's statements without asking the Caldwell Police Department—the agency to which he actually turned over the firearm—similar questions. Additionally, because Officer Seavey did not explicitly tell Garibay that he would not face legal consequences for being in possession of a firearm when he went to turn it in, Garibay should have been on notice to inquire further about the legality of his conduct. Thus, Garibay's reliance on Officer Seavey's statements—affirmatively misleading or not—was not objectively reasonable.

Garibay was not affirmatively misled by a federal agent to violate the law. Rather, Garibay was already in violation of the law when he was told by a local police officer to turn over the firearm. Additionally, Officer Seavey did not tell Garibay that his conduct was within the confines of the law. As such, Garibay has not provided sufficient evidence which would entitle him to an entrapment by estoppel or public authority defense.

MEMORANDUM DECISION AND ORDER - 12

### C. Government's Motion in Limine to Exclude Evidence

#### 1. *Legal Standard*

The Court must now turn to the Government's motion to exclude evidence of prior threats and assaults upon Garibay. Under the Federal Rules of Evidence, evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. However, the Court "may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. Under our precedent, even "a small risk of misleading the jury" substantially outweighs the probative value of minimally relevant evidence. *United States v. Hitt*, 981 F.2d 422, 424 (9th Cir. 1992); *United States v. Gonzalez–Flores*, 418 F.3d 1093, 1098–99 (9th Cir. 2005) (evidence presenting even a "modest likelihood of unfair prejudice" is "high enough to outweigh the . . . probative value" of marginally relevant evidence).

#### 2. *Analysis*

The Government claims that introducing evidence of past threats against Garibay will mislead the jury and confuse the issues. Dkt. 29. Specifically, the Government requests an order from the Court excluding evidence of the drive-by shooting perpetrated by Contreras's brother in November 2016 and the assault upon Garibay in April 2018. Dkt. 29. However, because Garibay is entitled to a jury instruction on the justification defense, evidence relating to past threats or acts of violence is relevant. To raise and adequately

present his defense, Garibay intends to demonstrate that he was under a present threat of harm from Contreras. During their encounter on December 2, 2018, Garibay explicitly refers to both incidents when he says, "Just don't try to send someone to shoot me or stab me okay."  Dkt. 56, Exhibit. M at 13:40-13:49. Both of these incidents were clearly on Garibay's mind on December 2, 2018 and speak to why he feared Contreras may escalate the situation. Thus, evidence that Garibay was the victim of a drive-by shooting in 2016 and a battery in April of 2018 directly speak to the first element of the justification defense. While there may be some risk of confusing the jury, it is not substantial enough to outweigh the relevance of the evidence.[1] As such, evidence related to these two incidents shall not be excluded.

## V. CONCLUSION

In sum, the Court GRANTS Garibay's Motion to present a justification defense, DENIES Garibay's Motion to present an entrapment by estoppel/public authority defense, and DENIES the Government's Motion in Limine to exclude evidence.

## VI. ORDER

The Court HEREBY ORDERS:

1. The Government's Motion in Limine to exclude certain evidence (Dkt. 29) is DENIED.

2. Garibay's request to present a justification defense (Dkt. 39) is GRANTED.

---

[1] Furthermore, the Court can remedy any such concerns with a limiting jury instruction.

MEMORANDUM DECISION AND ORDER - 14

3.  Garibay's request to present an entrapment by estoppel/public authority defense

(Dkt. 38) is DENIED.

DATED: October 27, 2020

David C. Nye
Chief U.S. District Court Judge

MEMORANDUM DECISION AND ORDER - 15