UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>v.<br><br>JESUS GARIBAY,<br><br>    Defendant. | Case No. 1:19-cr-00093-DCN<br><br>**MEMORANDUM DECISION AND ORDER** |

## I. INTRODUCTION

Pending before the Court is Defendant Jesus Garibay's Motion to Dismiss. Dkt. 62. The Government opposes the Motion. Dkt. 63. Having reviewed the record and briefs, the Court finds that the facts and legal arguments are adequately presented. Accordingly, in the interest of avoiding further delay, and because the Court finds that the decisional process would not be significantly aided by oral argument, the Court will decide the Motion without oral argument. Dist. Idaho Loc. Civ. R. 7.1(d)(1)(B). Upon review, and for the reasons set forth below, the Court DENIES the Motion.

## II. BACKGROUND

On March 12, 2019, a federal grand jury indicted Jesus Garibay on one count of unlawful possession of a firearm in violation of 18 U.S.C. § 922(g)(9). Dkt. 1. Section 922(g)(9) prohibits individuals with prior misdemeanor convictions for domestic violence from possessing firearms. The events giving rise to this indictment occurred in December 2018. Garibay's prior conviction for domestic violence (which prevented him from

possessing firearms) occurred in 2016. Both instances involve Garibay's girlfriend, Emily Contreras.

On May 21, 2016, Contreras called 911 and told the dispatcher that her boyfriend—Garibay—had beaten her up. The details of the fight are not relevant to this case; suffice it to say, Garibay's actions were violent and volatile. Owing to the extent of Contreras's injuries, Garibay was charged with felony domestic battery. At a preliminary hearing before an Idaho State Magistrate Judge, Contreras recanted and claimed Garibay had done nothing to her. The Magistrate Judge noted that he did not believe Contreras's testimony and that all the available evidence pointed to the inevitable conclusion that Garibay was the aggressor. The Magistrate Judge found there was probable cause for the felony charges.

Garibay maintained his innocence throughout the duration of the state-court criminal proceedings; however, the State of Idaho eventually made him an offer that was "too good to refuse." Dkt. 62, at 3. In exchange for his guilty plea, the State agreed to amend the felony charge and reduce it to a misdemeanor, recommend probation, and dismiss the remaining charges. Garibay ultimately entered an *Alford* plea[1] to the charge, fully admitting that he did so in order to obtain the benefits of the plea negotiations. *Id*. at 4. The conviction was entered on October 24, 2016.

On November 14, 2016, Garibay and his brother were the victims of a drive-by shooting committed by Contreras's brother and a cohort. Garibay believes the shooting

---

[1] In an *Alford* plea, a criminal defendant admits that the evidence presented would likely persuade a factfinder to determine guilt beyond a reasonable doubt, while maintaining his or her innocence. *See infra* Section III.B.

MEMORANDUM DECISION AND ORDER - 2

may have been related to an argument he had with Contreras. During the investigation of that crime, Detective Joseph Cardwell approached Garibay with an offer to become an informant. After meeting with Detective Cardwell a handful of times, rumors spread in the community that Garibay was a "snitch." Additionally, one of the perpetrators of the November 2016 drive-by shooting discovered that Garibay had cooperated with law enforcement in their investigations of that event and put a gang hit, or "light," on Garibay. This hit ultimately lead to a knife attack on Garibay by two assailants in April of 2018.

The next month (May 2018) Garibay and/or Contreras bought a firearm. This particular fact is *highly* disputed by the parties. The Government claims that Garibay sought to purchase the firearm himself, was denied (presumably because of his prior conviction), and so he had Contreras purchase the firearm for him. Garibay, on the other hand, claims that Contreras bought the firearm on her own to protect herself and her family. Regardless of the competing positions, Contreras was the purchaser of the firearm on paper. Contreras claims that she kept the gun locked in a safe to which Garibay did not have access. Garibay claims that he never touched the firearm until December 2, 2018.

In late November 2018, Garibay and Contreras separated. On December 2, 2018, Garibay returned to the residence he and Contreras shared to retrieve his personal belongings. Contreras became volatile and later admitted to "flipping out." Dkt. 56, Exhibit M at 4:28-4:35. During this encounter while collecting his things, Garibay saw the firearm in plain view—not locked in the safe. Fearing their argument could escalate, Garibay took possession of the firearm and locked it in his brother's vehicle outside the residence. Garibay then called Boise Police to ask for assistance in retrieving his things. When Officer

Ian Seavey arrived on scene, Garibay informed him of his violent past with Contreras and that he had taken a gun from the house and locked it in a vehicle. Garibay later asked Officer Seavey if he should retrieve the firearm. Officer Seavey instructed Garibay to stay where he was and not to retrieve the firearm from the vehicle. Officers then acted as "a civil standby of sorts," Dkt. 63, at 3, while Garibay collected his belongings and left the residence.

After Garibay left, Contreras called Boise Police to report that Garibay had stolen her firearm. Officer Seavey then contacted Garibay via text and directed him to turn the firearm over to the Caldwell Police. Garibay turned over the firearm right away. In February of 2019, Garibay was arrested for unlawful possession of a firearm relating to his conduct on December 2, 2018.

In preparation for trial, the Government filed a Motion in Limine seeking to exclude any evidence that Garibay was the victim of the drive-by shooting in 2016 and the battery in April of 2018. Dkt. 29. Garibay's pre-trial submission was a Notice of Public Authority/Entrapment by Estoppel Defense and an Offer in Support of a Justification Defense. Dkts. 38, 39, 56.

Following an evidentiary hearing on the motions, the Court granted Garibay's motion to present a justification defense at trial, denied Garibay's motion to present an entrapment by estoppel/public authority defense, and denied the Government's motion to exclude evidence of the prior crimes against Garibay.

Recently, Garibay filed a Motion to Dismiss the indictment on the grounds that the prohibition to possessing firearms (Section 922(g)(9)) violates the second amendment on

its face and as applied to Garibay. Dkt. 62. The Government filed a response in which it strongly opposes the Motion. Dkt. 63. Garibay did not reply.

### III. ANALYSIS

Garibay begins his motion by admitting that there is controlling precedent from the Ninth Circuit on one aspect of his motion and that this precedent is adverse to his position. He explains that the Ninth Circuit held, in *United States v. Chovan*, that § 922(g)(9) *does not* violate the Second Amendment on its face. 735 F.3d 1127, 1136–41 (9th Cir. 2013). Garibay admits that the Court is bound by *Chovan*, but that he nevertheless brings the present motion: "(1) to preserve his facial challenge for appellate review by the Supreme Court of the United States; and (2) to challenge the statute as applied in this case." Dkt. 62, at 2. The Court will address these two challenges in turn.

Briefly, however, the Court reviews the distinction between facial and as-applied challenges. As the Court has explained previously:

> Facial challenges seek to have a statute declared unconstitutional "on its face." This standard presents an extremely high bar because a plaintiff must show that the statute is unconstitutional *in all* possible applications and situations. *See Diaz v. Paterson*, 547 F.3d 88, 101 (2d Cir. 2008) (finding "a facial challenge to a legislative Act is . . . the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the Act would be valid.").
>
> . . . .
>
> As-applied challenges, on the other hand, do not look at the text, or face, of the statute, but rather argue that even if a law is valid on its face, it may nonetheless—as the name suggests—be unconstitutionally applied. The question in an as-applied challenge is whether the statute is unconstitutional when applied in a particular case. *See Tsirelman v. Daines*, 19 F. Supp. 3d 438, 447–48 (E.D.N.Y. 2014), *aff'd*, 794 F.3d 310 (2d Cir. 2015).

MEMORANDUM DECISION AND ORDER - 5

*Does 1-134 v. Wasden*, No. 1:16-CV-00429-DCN, 2018 WL 2275220, at *4 (D. Idaho May 17, 2018); *see also Hecox v. Little*, 479 F. Supp. 3d 930, 968 n. 25 (D. Idaho 2020) (discussing the interrelated and convoluted nature of facial and as-applied challenges). With this distinction in mind, the Court turns to Garibay's arguments.

### A. Facial Challenge

Garibay concedes that the Ninth Circuit has already determined that § 922(g)(9) is constitutional on its face. This aside, Garibay argues that "the Ninth Circuit got it wrong," when determining the level of scrutiny to apply to such a challenge. Dkt. 62, at 7.

Garibay notes that the Ninth Circuit applied intermediate scrutiny in *Chovan* but argues that "the Supreme Court will disagree" and likely apply strict scrutiny to § 922(g)(9), if given the opportunity. Garibay argues strict scrutiny should apply because § 922(g)(9) constitutes "a total proscription on the exercise of a fundamental right." *Id*.

The Court does not know what level of scrutiny the Supreme Court would apply to § 922(g)(9), but such is of no import. In *District of Columbia v. Heller*, the Supreme Court famously *did not* delineate what type of scrutiny should be applied when evaluating Second Amendment restrictions. 554 U.S. 570, 628, 634, 687 (2008). Until that happens, the Court is bound by the Ninth Circuit's holding that "§ 922(g)(9) does not implicate the core Second Amendment right, but it does place a substantial burden on the right. Accordingly, we conclude that intermediate rather than strict scrutiny is the proper standard to apply." <u>Chovan</u>, 735 F.3d at 1138.

For a statute to withstand intermediate scrutiny, the government must have a "significant, substantial, or important" objective, and the statute must be "a reasonable fit"

MEMORANDUM DECISION AND ORDER - 6

to achieve that objective. *Id.* at 1139. As the *Chovan* court observed, the clear objective of § 922(g)(9) is to prevent domestic gun violence and this objective is "undeniably important." *Id.* at 1139–40 (quoting *United States v. Booker*, 644 F.3d 12, 25 (1st Cir. 2011)).

The Ninth Circuit went on to outline four ways in which § 922(g)(9) relates to this objective. These reasons include (1) the fact that domestic abusers are not often convicted of felonies; (2) that domestic abusers have a high rate of recidivism; (3) that a large number of domestic abusers use guns; and (4) that "incidents of domestic violence involving firearms are twelve times more likely to end in the victim's death than incidents where a perpetrator is either unarmed or armed with a knife alone." *Id.* at 1140.

The Court must abide by *Chovan* in principle, but it does so without hesitation. Prohibiting domestic violence misdemeanants from possessing firearms is substantially related to preventing domestic gun violence, and § 922(g)(9) is constitutional on its face.

Garibay argues in passing that § 922(g)(9) is unconstitutional on its face because it fails to take into account the length of time a person has been a law-abiding citizen, and that as written, it would impermissibly prevent a 70-year-old person (who is clearly no longer a danger to society) from possessing a gun on the sole basis that he or she has a 50-year-old misdemeanor conviction. Dkt. 62, at 8. This argument is misplaced for multiple reasons.

First, this statement is full of assumptions—that older people are not a threat to society and that recidivism diminishes over time—that while understandable and/or logical, are just that: assumptions. Second, Garibay's contention misconstrues the

applicable test courts employ on facial challenges. The question is whether the statute is unconstitutional in *all* applications; not whether one (or some) applications of that statute may miss the constitutional mark. Presumably there will always be situations in which the wide net of a statute captures a person who arguably should not be included in its grasp. But that is precisely why as-applied challenges are allowed. Finally, the Ninth Circuit specifically rejected this argument in *Chovan* noting that:

> If Congress had wanted § 922(g)(9) to apply only to individuals with recent domestic violence convictions, it could have easily created a limited duration rather than lifetime ban. Or it could have created a good behavior clause under which individuals without new domestic violence arrests or charges within a certain number of years of conviction would automatically regain their rights to possess firearms. But Congress did not do so. Congress permissibly created a broad statute that only excepts those individuals with expunged, pardoned, or set aside convictions and those individuals who have had their civil rights restored.

735 F.3d at 1142; *see also United States v. Torres*, 911 F.3d 1253, 1264 n.6 (holding that, under intermediate scrutiny, some amount of over-inclusiveness for a firearms prohibition is permissible). Like the Court in *Chovan*, the Court rejects Garibay's argument that unenumerated exceptions should apply. If Garibay wants to advocate for these types of caveats to § 922(g)(9) he may do so, but not in this forum. The statute, as written, is constitutional on its face.

## B. As Applied Challenge

Garibay next argues that § 922(g)(9) is unconstitutional as applied in this case. A statute is unconstitutional "as applied," when "by its own terms, [it] infringe[s] constitutional freedoms in the circumstances of the particular case." *United States v. Christian Echoes Nat'l Ministry, Inc.*, 404 U.S. 561, 565 (1972). Thus, even though the

Court has already concluded that § 922(g)(9) is constitutional on its face, it must ask whether it is constitutional as to Garibay's situation. Again, absent authority to support Garibay's proposition that the Court should apply strict scrutiny, it applies intermediate scrutiny and asks whether the government has a substantial interest in specifically prohibiting Garibay from possessing firearms and, if so, whether section § 922(g)(9) is substantially tailored to that interest.

Garibay puts forth three reasons why § 922(g)(9) is unconstitutional as applied to him. The Court briefly addresses each.

First, Garibay argues that because he entered into an *Alford* plea in his 2016 misdemeanor case, the Government should have *less* interest in prohibiting him from possessing a firearm compared to persons who were actually proven to be guilty and/or violent. Garibay highlighted numerous times throughout his briefing that he had entered an *Alford* plea in his prior case and now hinges this argument on that nuance. However, this contention is much ado about nothing.

In an *Alford* plea—named after United States Supreme Court case *North Carolina v. Alford,* 400 U.S. 25 (1970)—the defendant maintains his or her innocence, but admits that the evidence presented would likely persuade a judge or jury that he or she was guilty beyond a reasonable doubt. Critically, however, the type of plea a person enters into is *immaterial* to the application of § 922(g)(9). Section 922(g)(9) does not say its application is limited to only those individuals who *are* truly guilty or are *proven* to be violent as Garibay suggests. Rather, § 922(g)(9) states that it applies to anyone "who has been *convicted*" of a misdemeanor domestic violence crime. It does not take into consideration

*how* that conviction came about.

In *United States v. McCall*, the Eighth Circuit was presented with the same argument Garibay proffers here—that a prior *Alford* plea negated application of the statute. The Eighth Circuit found that the predicate offense statute at issue in that case (18 U. S. C. § 924(e)(1)) applied to prior "convictions" and, accordingly, there was no need to distinguish between "convictions that result from *Alford* pleas, more typical guilty pleas, or jury verdicts." 507 F.3d 670, 675 n. 4 (8th Cir. 2007). The same analysis applies here. Simply put, Garibay's argument that the *form* of his conviction should play a role in whether the Government has an interest in prohibiting him from possessing a firearm is immaterial and unpersuasive.

Second, Garibay argues that his offense was less serious than that of the defendant in *Chovan* because he was sentenced to probation, while the defendant in *Chovan* was sentenced to 120 days in jail. Again, this distinction is irrelevant to the Court's analysis. The question is not whether Garibay is similarly situated to another defendant in another jurisdiction who was sentenced by another judge for another crime. Garibay is bringing an as-applied challenge. Therefore, the question is whether § 922(g)(9)'s application to Garibay (irrespective of its application to others) is substantially related to the goal of reducing domestic gun violence. Here, the Court finds that it is. Although Contreras changed her story in 2016, ample other evidence indicates that Garibay *was* the perpetrator of the domestic incident, and that *violence* was involved. Contreras's initial statements, the police reports, and the photographs of the injuries all point to the singular conclusion that Garibay did cause substantial harm to Contreras. That Garibay ultimately got probation

MEMORANDUM DECISION AND ORDER - 10

does not change the fact that he is the type of person § 922(g)(9) seeks to prohibit from possessing firearms. Thus, like the form of Garibay's conviction, the actual sentence imposed does not matter to the Court today. Nothing in the statute or caselaw calls for the type of analysis Garibay suggests.

Third and finally, Garibay argues that he has been rehabilitated, is a law-abiding citizen, and is no longer violent. Assuming this is all true, such is great news for Garibay, his family, and the community. Again, however, it does little to support Garibay's legal argument. As already noted, *Chovan* rejected a similar "passage of time" and/or "rehabilitated" justification. 735 F.3d at 1142; *see also United States v. Smith*, 742 F. Supp. 2d 855, 869 (S.D.W.Va. 2010) ("[D]omestic violence misdemeanants are prone to recidivism—whether one month later or one decade later—and firearms only serve to escalate subsequent domestic violence disputes.").

Thus, as with this argument in the context of a facial challenge, the argument falls flat as applied to Garibay. The reality is that Garibay has not been a model citizen over the last five years. In 2016—in conjunction with the underlying domestic violence offense—he was convicted of violating a no-contact order. Dkt. 63-3. In 2020, he pled guilty to driving under the influence. Dkt. 63-8. Yes, Garibay did successfully complete a 52-week domestic violence rehabilitation course as required and has not had any other charges of a violent nature, but such does not place his prior conviction outside the purview of § 922(g)(9). As the *Chovan* court found, a defendant's past actions should all "be considered, especially in light of one of the underlying rationales of § 922(g)(9): acts of domestic violence are under-reported and often do not lead to arrest or conviction." *Id*. at 1141.

Again, however, even assuming Garibay had no other violent episodes and/or was currently a law-abiding citizen, such does not negate the fact that § 922(g)(9) does not have carve-outs for either of those rationales. His prior conviction must, therefore, still be considered when evaluating the constitutionality of § 922(g)(9)'s application to his circumstances.

## IV. CONCLUSION

Facially, § 922(g)(9) is constitutionally valid. The Court is bound by *Chovan*.

Section 922(g)(9) is also constitutionally valid as applied to Garibay. He cannot distinguish himself from that class of people who Congress determined should be prohibited from possessing firearms. If Garibay wishes to challenge the lack of caveats in § 922(g)(9) he may do so. However, this is not the branch of government that can entertain such arguments. Until such a time as Congress expands the number of exceptions in § 922(g)(9), the Court must analyze it as written. It has done so here and finds Garibay's arguments fall short.

First, the manner of his conviction is inconsequential; he was *convicted* of a domestic violence crime which is all that § 922(g)(9) requires. Second, the sentence imposed does not negate § 922(g)(9)'s application to him because, again, his underlying crime involved violence and is the type of crime § 922(g)(9)'s firearm restriction encompasses. Finally, even assuming Garibay is fully rehabilitated and will *never* be violent again, that does not negate § 922(g)(9)'s application to him at this time. Again, absent an exception for something akin to the "passage of time" and/or "rehabilitation," the Court cannot so interpret the statute.

MEMORANDUM DECISION AND ORDER - 12

In sum, the Court finds that the Government *does* have a substantial interest in prohibiting Garibay from possessing a firearm and the application of § 922(g)(9) to Garibay is substantially tailored to that interest.

## V. ORDER

The Court HEREBY ORDERS:

1. Garibay's Motion to Dismiss (Dkt. 62) is DENIED.

DATED: March 16, 2021

David C. Nye
Chief U.S. District Court Judge